UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADDUS HEALTHCARE, INC., an Illinois corporation, and WHITNEY CLENDENIN, <br><br> Plaintiffs, <br><br> vs. <br><br> AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation, <br><br> Defendant. | 11 C 3788 <br><br> Judge Feinerman |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Addus Healthcare, Inc., and Whitney Clendenin brought this suit for a declaratory judgment that Defendant Auto-Owners Insurance Company has a duty to pay for Plaintiffs' defense by Plaintiffs' chosen counsel in *Carney v. Crady*, No. 2010 L 120 (Cir. Ct. Williamson Cnty., Ill. filed Aug. 19, 2010), a tort action in which Plaintiffs are named as defendants. Citing *R.C. Wegman Construction Co. v. Admiral Insurance Co.*, 629 F.3d 724, *rehearing denied*, 634 F.3d 371 (7th Cir. 2011) ("*Wegman*"), Plaintiffs claim that a conflict of interest exists between Plaintiffs and Auto-Owners because there is a nontrivial probability that the amount of the judgment in the *Carney* action will exceed Plaintiffs' coverage under the Auto-Owners policy, and that Auto-Owners is therefore obligated to pay for Plaintiffs to hire counsel of their choice to defend the action. The parties have filed cross-motions for summary judgment. Docs. 63, 82. Plaintiffs' motion is granted and Auto-Owners's motion is denied.

The material facts are largely undisputed. To the extent there are disputes, because the court will grant Plaintiffs' motion, it will take the facts and inferences from the facts as

favorably to Auto-Owners as the record and Local Rule 56.1 allow. *See In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) ("With cross summary judgment motions, we construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made.") (internal quotation marks omitted).

In July 2010, Clendenin was involved in an automobile accident. Doc. 89 at ¶¶ 2, 12. At the time, Clendenin was an employee of Addus Healthcare. *Id.* at ¶¶ 1-2. In October 2010, a person injured in the accident, together with the husband and estate of a person fatally injured in the accident, brought the *Carney* suit against Plaintiffs in Illinois state court. Doc. 84 at ¶ 9. The first amended complaint in *Carney* alleges that the two injured persons were passengers in the vehicle that Clendenin was driving and that Clendenin negligently crashed the vehicle, thereby causing the passengers' injuries. Doc. 1 at pp. 11-12, ¶¶ 1-7; *id.* at p. 13, ¶ 7. It further alleges that Clendenin was acting within the scope of her employment with Addus when the accident occurred, making Addus vicariously liable for her alleged negligence. *Id.* at p. 14, ¶¶ 10-11.

The vehicle Clendenin was driving was covered by an Auto-Owners insurance policy held by the vehicle's owner, Johnny Hess. Doc. 84 at ¶ 14; Doc. 89 at ¶ 13. The policy's bodily injury liability coverage is subject to policy limits of $50,000 per person and $100,000 per occurrence. Doc. 89 at ¶ 13. Addus also held a commercial policy issued by Liberty Mutual and an excess liability policy issued by Chicago Insurance Company. *Id.* at ¶ 14. The policy limit for the Liberty Mutual policy is $1 million, though there is a $200,000 deductible, which requires Plaintiffs to pay up to $200,000 in defense fees or liability covered by Liberty Mutual. *Id.* at ¶ 15; *id.* at p. 16, ¶¶ 1-5. The policy limit for the Chicago Insurance Company policy is $7 million. *Id.* at ¶ 16. The Liberty Mutual and Chicago Insurance Company policies remain

available to cover liability in excess of the $100,000 covered by the Auto-Owners policy, subject to the Liberty Mutual policy's $200,000 deductible. *Id.* at ¶¶ 17-19.

In December 2010, Plaintiffs tendered to Auto-Owners their defense in the underlying suit. *Id.* at ¶¶ 20, 24. Auto-Owners accepted the tender and retained an attorney, Michal Doerge, to represent Plaintiffs. *Id.* at ¶ 27. Plaintiffs do not allege that Doerge's handling of their defense has been deficient in any way. *Id.* at ¶¶ 29-32. Nonetheless, Plaintiffs believed that there was a nontrivial probability that the amount of the judgment in *Carney* would exceed Auto-Owners's $100,000 policy limit and that they were therefore entitled, under *Wegman*, to have Auto-Owners pay for them to be represented by counsel of their choice. Doc. 84 at ¶ 20; Doc. 89 at ¶¶ 24-26. Plaintiffs demanded that Auto-Owners assign their chosen attorneys, the law firm of Johnson & Bell, to defend them in *Carney*. Doc. 84 at ¶ 20. Auto-Owners refused. *Id.* at ¶¶ 22-23. Plaintiffs retained Johnson & Bell nonetheless, and Liberty Mutual has paid that firm's fees and costs, which amount to $92,892.25 thus far. *Id.* at ¶ 6; Doc. 89 at ¶ 28. Doerge has valued the underlying suit at between $1,176,502.90 and $2,336,502.90; Johnson & Bell's estimates range from $3 million to $5.6 million. Doc. 89 at ¶¶ 45-46. Auto-Owners does not suggest that the value of a settlement of the underlying suit or of a judgment against Plaintiffs is likely to be within Auto-Owners's $100,000 limit, and nor do Plaintiffs suggest that any settlement or judgment might exceed the $8 million in coverage they have from their two other insurers. Doc. 84 at ¶¶ 33-34; Doc. 89 at ¶ 47.

In March 2012, Auto-Owners tendered the full limits of its policy to Addus and Liberty Mutual and ceded to them the authority to undertake settlement negotiations with the *Carney* plaintiffs and, if possible, to settle the case. Doc. 89 at ¶¶ 40-41. No settlement has occurred. *Id.* at ¶¶ 36, 39. Because they believe Auto-Owners is transgressing *Wegman* by continuing to

refuse to fund their defense by Johnson & Bell, Plaintiffs filed this suit, seeking a declaratory judgment (1) that a conflict of interest exists between Plaintiffs and Auto-Owners with respect to their defense in the underlying suit, and (2) that they are therefore entitled to be defended by counsel of their choice at Auto-Owners's expense.

The principal question here is whether *Wegman* entitles Plaintiffs to have Auto-Owners pay for their chosen counsel, but a preliminary question is whether this suit, which is governed by Illinois law, falls within the federal courts' diversity jurisdiction under 28 U.S.C. § 1332(a). The parties are diverse: Clendenin is a citizen of Illinois, Addus is an Illinois corporation with its principal place of business in Illinois, and Auto-Owners is a Michigan corporation with its principal place of business in Michigan. Doc. 84 at ¶¶ 1-3. But Auto-Owners asserts that the amount-in-controversy requirement of § 1332(a) is not met because the value to either party of the declaratory judgment sought by Plaintiffs falls short of $75,000.

The court previously denied a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction that presented the same ground for dismissal. 2011 WL 5142988 (N.D. Ill. Oct. 28, 2011). Many of Auto-Owners's jurisdictional arguments at this stage simply repeat the arguments the court rejected in denying their Rule 12(b)(1) motion; the court stands by the reasoning set forth in its earlier opinion and will not repeat it here. However, discovery has brought to light a fact that requires some analysis: While the court's earlier opinion assumed that Plaintiffs themselves were paying Johnson & Bell's fees, it is now clear that those payments have actually been made by Liberty Mutual; Plaintiffs themselves have paid nothing. Doc. 84 at ¶ 6; Doc. 89 at ¶ 7.

The standard that applies where one party contests federal jurisdiction on amount-in-controversy grounds is as follows:

> [A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. ... Only if it is "legally certain" that the recovery (from the plaintiff's perspective) or cost of complying with the judgment (from the defendant's) will be less than the jurisdictional floor may the case be dismissed.

*Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) (citation omitted); *see also Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002) ("In this circuit ... the jurisdictional amount should be assessed by looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief—the so-called 'either viewpoint' rule.") (citing cases). The same rule applies where the plaintiff requests a declaratory judgment or an injunction. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 346-49 (1977) ("[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of litigation"); *America's MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004) ("In suits seeking the equitable remedies of an injunction or a declaratory judgment, ... the value of the object of litigation is the 'pecuniary result' that would flow to the plaintiff (or defendant) from the court's granting the injunction or declaratory judgment.").

In this case, no jurisdictional facts are contested and it is not "legally certain" that the value to Plaintiffs of the declaration they seek would fall short of $75,000. If Plaintiffs prevail, the likely practical effect of the declaratory judgment would be to force Auto-Owners to pay for Johnson & Bell to defend Plaintiffs in the *Carney* suit, and attorney fees in an underlying suit can satisfy the amount-in-controversy requirement of § 1332(a). *See Sadowski*, 441 F.3d at 537 (an insurer's "expense of providing a legal defense against [an underlying suit against the

insured] counts for purposes of § 1332"); *Grinnell Mut. Reins. Co. v. Shierk*, 121 F.3d 1114, 1117 n.2 (7th Cir. 1997) (same). True, Liberty Mutual has paid Johnson & Bell thus far, with Plaintiffs paying nothing. But the deductible on the Liberty Mutual policy means that Plaintiffs (specifically, Addus) are on the hook to reimburse Liberty Mutual up to $200,000 in defense and liability costs expended on Plaintiffs' behalf. Doc. 89 at ¶¶ 1-5. If Plaintiffs are not found liable in *Carney* and do not settle, then their obligation will be to reimburse Liberty Mutual for Johnson & Bell's fees up to the $200,000 limit. In that event, the value of the declaratory judgment to Plaintiffs will be the amount of that reimbursement, an amount that already exceeds $92,000, thus satisfying the $75,000 threshold; the declaratory judgment would require Auto-Owners rather than Plaintiffs to pay that amount. And because it is not "legally certain" that this result will not come to pass—and Auto-Owners does not argue that it *is* "legally certain"—the amount-in-controversy requirement is satisfied. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."); *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) ("unless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court").

Auto-Owners retorts that Plaintiffs will not have to pay Liberty Mutual anything because it is undisputed that "the amount of money available for indemnity under the policies of insurance covering the plaintiffs in the underlying suit has not been eroded by the payment of defense costs." Doc. 89 at ¶ 8; Doc. 97 at 11. Auto-Owners's conclusion does not follow from its premise. The fact that Plaintiffs' defense costs are not eroding the $1 million of indemnity provided by the Liberty Mutual policy does not speak to whether those defense costs apply toward the $200,000 deductible. In fact, a senior technical claims representative of Liberty

Mutual, Scott May, testified at his deposition that "[b]oth defense and indemnity payments erode that $200,000 deductible." Doc. 86-2 at 6; *see also* Doc. 89 at p. 16, ¶ 2. Auto-Owners has provided no ground for disputing May's testimony.

With jurisdiction resolved, the court can proceed to the merits. The dispositive issue is whether this case is controlled by *Wegman*. Applying Illinois law, *Wegman* held that where an insurer has a duty to defend an insured against a lawsuit and there is a "nontrivial probability" that the suit will end with a judgment or settlement exceeding the indemnity provided under the insurance policy, a conflict of interest exists between the insurer and the insured, thereby obligating the insurer to pay for the insured's defense by counsel of the insured's choosing. 629 F.3d at 730. *Wegman* explained the rationale for this duty as follows:

> [A] correlative to the standard provision that authorizes a liability insurer to control the defense of a claim against the insured is "the duty not to gamble with the insured's money by foregoing reasonable opportunities to settle a claim on terms that will protect the insured against an excess judgment. Were it not for this duty, a duty fairly implied in the insurance contract, in a case in which a claim could be settled at or near the policy limit, yet there was a good although not a certain chance that it could be beaten at trial, the insurance company would be sorely tempted to take the case to trial. For that would place it in a 'Heads I win, tails you lose,' position. Suppose the claim was for $2 million, the policy limit was $1 million, the plaintiff was willing to settle for this amount, but the defendant's insurer believed that if the case was tried the plaintiff would have a 50 percent chance of winning $2 million and a 50 percent chance of losing. The insurer's incentive would be to refuse to settle, since if it lost the trial it would be no worse off than if it settled—in either case it would have to pay $1 million—but if it won it would have saved itself $1 million."

*Id.* at 725-26 (quoting *Twin City Fire Ins. Co. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1179 (7th Cir. 1994)). *Wegman* explained further that:

> When a potential conflict of interest between insured and insurer arises, the insurance company's duty of good faith requires it to notify the insured. The usual conflict of interest involves the insurance company's denying coverage ..., but the principle is the same when the conflict arises from the

> relation of the policy limit to the insured's potential liability .... Once notified by the insurer of the conflict, the insured has the option of hiring a new lawyer, one whose loyalty will be exclusively to him. If he exercises that option, the insurance company will be obligated to reimburse the reasonable expense of the new lawyer.

*Id.* at 729 (citations omitted). *Wegman* held that a conflict arises "when [the insurer] learn[s] that an excess judgment (and therefore a settlement in excess of the policy limits, as judgment prospects guide settlement) [i]s a nontrivial probability" in the underlying suit. *Id.* at 730.

The parties here agree that there is a nontrivial probability of a judgment in *Carney* exceeding the $100,000 of coverage provided by Auto-Owners; indeed, both Doerge and Johnson & Bell placed the bottom ends of their estimated valuations above $1 million, which is unsurprising given that *Carney* involves a wrongful death claim. That ought to be the end of this suit. Under the plain terms of *Wegman*, the nontrivial probability of an excess judgment creates a conflict between Plaintiffs and Auto-Owners and thus obligates Auto-Owners to pay the reasonable costs of Plaintiffs' defense by their chosen counsel, Johnson & Bell. But Auto-Owners raises several objections to this conclusion, which are considered in turn.

First, Auto-Owners argues that Plaintiffs' reliance on the portions of *Wegman* cited above is undermined by the *Wegman* panel's opinion denying rehearing, which, as Auto-Owners reads it, modified the standard set forth by the original opinion. As relevant to Auto-Owners's contentions, the rehearing opinion says this:

> Admiral's petition for rehearing contends that we held that "where there is a possibility of a verdict in excess of policy limits, there is a conflict of interest between the insurer and the insured." This characterization ignores the facts that led us to find a conflict .... We said that "the conflict in this case arose when Admiral learned that an excess judgment ... was a *nontrivial probability* in [the underlying suit]." Among the facts supporting that characterization were (1) the nature and severity of the plaintiff's injury, (2) the settlement demand in excess of policy limits, (3) the fact that the case had been slated for trial (and in fact tried), (4) the plaintiff's

> securing at trial an award *double* the policy limit, (5) Admiral's admission
> that its primary litigating strategy was to downplay Wegman's
> responsibility rather than to deny liability, and (6) Admiral's failure to warn
> Wegman that it had adopted a strategy that placed Wegman in jeopardy of
> an excess judgment.

634 F.3d at 372. As this passage makes clear, the Seventh Circuit did not modify the original opinion's "nontrivial probability" standard for activating the insurer's duty to pay for the insured's defense by counsel of the insured's choice. Rather, the court rejected the insurer's characterization of the original opinion as holding that "where there is a *possibility* of a verdict in excess of policy limits, there is a conflict of interest" (emphasis added); the conflict is created not by a mere "possibility," but only by a "nontrivial probability." The Seventh Circuit then listed six facts about the underlying suit in *Wegman* that supported the conclusion that there was not just a possibility of an excess judgment, but a nontrivial probability of one.

Auto-Owners points out that five of the six factors that led *Wegman* to conclude that an excess judgment was nontrivially probable there are absent here: there has been no settlement demand, no trial, and no judgment, and Plaintiffs were aware of the threat of an excess judgment from the start and do not accuse Auto-Owners of taking any concrete action detrimental to their interests. But the dispositive element in *Wegman* was the nontrivial probability of an excess judgment, not the factual circumstances that happened to show that such a probability existed on the facts of that case. In this case, the parties *agree* that there is a nontrivial probability of an excess judgment, and no reasonable factfinder could think otherwise. It does not matter that the facts that lead the parties to that view—that the underlying suit includes a wrongful death claim, that the Auto-Owners coverage ($100,000) is relatively low, and that both Doerge and Johnson & Bell estimate the likely value of the suit to be over $1 million—differ from those that led to the same ultimate conclusion in *Wegman*. *Wegman* does not turn on the particular reasons that

support a finding of a nontrivial probability of an excess judgment; it merely lists those reasons to illustrate that such a nontrivial probability was present in that case.

Pressing the same general point, Auto-Owners adds that "[o]f the six factors in [*Wegman*] only one is present in this case. That singular factor, a non-trivial probability of a judgment in excess of the limits of insurance, was held by the Court to be itself insufficient to support the finding of a conflict entitling an insured to independent counsel. ... Unlike in *Wegman*, none of the facts in addition to there being a non-trivial probability of a judgment in excess of Auto-Owners policy are present." Doc. 82-1 at 1-2, 6. This badly misreads *Wegman*. By the plain terms of both the original opinion and the rehearing opinion, the existence of a "nontrivial probability" of an excess judgment is not one factor among several; it is the dispositive consideration that entitles the insured to counsel of its choice paid for by the insurer.

Second, Auto-Owners contends that other facts specific to this case show that there is no conflict of interest between Auto-Owners and Plaintiffs. Even setting aside the fact that the existence of a nontrivial probability of a judgment in excess of coverage is dispositive under *Wegman*, Auto-Owners's contention is unpersuasive. Auto-Owners argues that its decision to tender the policy limits to Plaintiffs and allow them to decide whether to settle the *Carney* suit eliminated any conceivable conflict, since Auto-Owners now lacks the ability (which concerned the Seventh Circuit in *Wegman*) to forgo a settlement that would be beneficial to Plaintiffs but costly to Auto-Owners. But the litigation remains under the control of Auto-Owners's chosen attorney, Doerge, which means that a conflict remains. Because the maximum cost of losing the suit to Auto-Owners is $100,000, Doerge may be unwilling to undertake, and Auto-Owners may be unwilling to pay for, expensive litigation strategies that would have positive expected value to Plaintiffs but negative expected value to Auto-Owners.

Suppose, for example, that there is a 60% chance that Plaintiffs will be found liable, and that if they are found liable the judgment will be for $5 million; in that scenario, Plaintiffs' expected loss is $3 million (60% of $5 million), while Auto-Owners's expected liability is $60,000 (60% of the $100,000 policy limit). Suppose further that Plaintiffs' attorney could reduce the chance of their being found liable from 60% to 40% by hiring an expert witness of a certain type, and that the cost of the expert's services is $40,000. Then the expected benefit to Plaintiffs would be $1 million (the difference between 60% of $5 million and 40% of $5 million), and since that greatly exceeds the $40,000 cost, it would be in Plaintiffs' interest to hire the expert. But the expected benefit to Auto-Owners of hiring the expert would be only $20,000 (the difference between 60% of $100,000 and 40% of $100,000), and since that falls well short of the $40,000, it would be in Auto-Owners's financial interest to do without the expert's services. So it is easy to imagine plausible circumstances in which Auto-Owners and Plaintiffs would face a real conflict as regards Plaintiffs' defense strategy. *See Wegman*, 629 F.3d at 726 (quoting *Twin City Fire Ins. Co.*, 23 F.3d at 1179) (applying a similar hypothetical analysis); *id.* at 728 (same).

Auto-Owners retorts that there is no reason to believe that it or Doerge would favor Auto-Owners's interests if those interests conflicted with Plaintiffs': Plaintiffs have no complaints about any particular action Doerge has taken or not taken so far, Plaintiffs do not suggest that Doerge has violated Rule 1.7 of the Illinois Rules of Professional Conduct, Doerge has in fact hired a reputable expert witness to aid in the defense, and Doerge is incentivized by the threat of malpractice liability to act in Plaintiffs' interests rather than Auto-Owners's. That may all be true, and the court will assume for present purposes that it is true. But the Seventh Circuit rejected similar arguments in *Wegman*, and in so doing said that the insurer in that case

"misunderstands 'conflict of interest.' The term doesn't mean that the conflicted party is engaged in conduct harmful to another party. It means that their interests are divergent, which creates a potential for such harm." 629 F.3d at 730. Even if Auto-Owners has actually done nothing to harm Plaintiffs, the potential exists because their economic interests diverge. And if an attorney's fiduciary duty to his clients and the possibility of malpractice liability were enough, taken alone, to ensure that a conflict of interest between the insured and the insurer would not detrimentally affect the insured's defense, then *Wegman* would have come out differently. In fact, *Wegman* acknowledged the attorney's fiduciary duty, *ibid.* (noting that "the lawyer remains bound, ... both ethically and legally, to protect the interests of the insured in the defense of the tort claim") (internal quotation marks omitted), but nonetheless held that the insurer was required to pay for independent counsel of the insured's choosing. As the Appellate Court of Illinois explained in making the same point:

> The attorney-client relationship between the insured and the attorney hired by his insurer imposes upon the attorney the same professional obligations that would exist had the attorney been personally retained by the insured. Courts have recognized, however, that in reality, the insurer's attorneys may have closer ties with the insurer and a more compelling interest in protecting the insurer's position, whether or not it coincides with what is best for the insured. This reality frequently gives rise to conflicts of interest between insurer and insured.

*Nandorf, Inc. v. CNA Ins. Cos.*, 479 N.E.2d 988, 991 (Ill. App. 1985) (citations and internal quotation marks omitted). It follows that Doerge's fiduciary duties and his unimpeachable conduct thus far do not eliminate the conflict between Auto-Owners and Plaintiffs an does not warrant a result different from that reached in *Wegman*.[*]

---

[*] Auto-Owners submitted a report by an expert in legal ethics opining that Doerge did not violate Rule 1.7 of the Illinois Rules of Professional Conduct. Doc. 86-12. Plaintiffs moved to strike the report on the ground that the expert's opinions are not proper subjects

Third, Auto-Owners argues that "[a]n exclusive tender of defense [by Plaintiffs] to Auto-Owners is not permitted under Illinois law and the tender could not create a conflict." Doc. 82-1 at 11. The argument refers to Plaintiff's tender letter, Doc. 1 at 69-70, which notified Auto-Ownes that Plaintiffs had coverage under other policies but were electing to have Auto-Owners rather than the other insurers provide a defense:

> Pursuant to *John Burns v. Indiana Insurance Co.* 189 Ill.2d 570, 727 N.E.2d 211 (2000), which allows an insured covered by multiple concurrent policies the right to choose which insurer will defend and indemnify it with respect to a specific claim, *please consider this to be a targeted tender of defense and indemnification of Whitney Clendenin and Addus HealthCare, Inc. in this case.* We have notified our own insurance carrier of this suit, but have also advised it that we do not want it to participate in this matter until after the exhaustion of all other applicable insurance coverage.

*Id.* at 70 (emphasis added). Auto-Owners's argument fails for three independent reasons.

The first is that, setting aside whether the "targeted tender" doctrine recognized by Illinois law applies outside the construction context, compare *Pekin Ins. Co. v. Fidelity & Guar. Ins. Co.*, 830 N.E.2d 10, 19 (Ill. App. 2005) (no), with *United Nat'l Ins. Co. v. 20 N. Dearborn P'ship*, __ N.E.2d __, 2012 WL 5205626, at *6-7 (Ill. App. Oct. 22, 2012) (implicitly yes), another feature of Illinois law allowed Plaintiffs to assign their defense to Auto-Owners. Illinois law holds that "primary liability is generally placed on the insurer of the owner of an automobile

---

of expert testimony. Doc. 75. The motion is denied as moot. Auto-Owners deploys the expert report to support its Local Rule 56.1 statement that "there is no conflict of interest under Rule 1.7 of the Illinois Code of Professional Conduct for Doerge in representing Addus, Clendenin and Auto-Owners in the underlying suit." Doc. 86 at ¶ 57. Auto-Owners's briefs cite the Local Rule 56.1 statement for the same proposition. Doc. 82-1 at 10; Doc. 97 at 8. As noted above, the court accepts that Doerge has not violated Rule 1.7, but holds that his compliance with the Rule does not serve to distinguish *Wegman*. And because the summary judgment papers do not otherwise call attention to the expert report, there is no need to determine whether the other opinions set forth in the report are proper subjects of expert testimony.

rather than on the insurer of the operator." *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Group*, 695 N.E.2d 848, 851 (Ill. 1998); *see also Coca-Cola Enters., Inc. v. ATS Enters., Inc.*, 670 F.3d 771, 775-76 (7th Cir. 2012). Auto-Owners was the insurer of the vehicle's owner, Hess, which means that Auto-Owners, rather than Plaintiffs' insurer Liberty Mutual, is the primary insurer. If the general rule does apply here—and Auto-Ownes gives no reason why it does not—then Plaintiffs' tender of their defense exclusively to Auto-Owners was proper, since Auto-Owners, as the primary insurer, alone had the duty to defend:

> Primary insurance is coverage whereby liability attaches immediately upon the happening of the occurrence that gives rise to liability. Primary policies generally impose on the insurer a duty of defense separate from the duty to indemnify the insured against the claim. Excess or secondary coverage liability attaches only after a predetermined amount of primary coverage has been exhaust[ed].

*Krusinski Constr. Co. v. Northbrook Prop. & Cas. Ins. Co.*, 760 N.E.2d 530, 537 (Ill. App. 2001) (citations omitted); *see also Am. Safety Cas. Ins. Co. v. City of Waukegan*, 776 F. Supp. 2d 670, 706 (N.D. Ill. 2011).

The next flaw in Auto-Owners's third argument is that, even if Plaintiffs' exclusive tender to Auto-Owners was improper under Illinois law, Auto-Owners waited too long to complain about the impropriety. As noted above, Plaintiffs' tender letter expressly stated that Plaintiffs were tendering their defense exclusively to Auto-Owners (Hess's carrier) and not to their own carrier. Doc. 1 at 69-70. Auto-Owners accepted the tender, without reservation of rights, in December 2010, saying: "Please be advised we are providing defense for Addus HealthCare and Whitney Clendenin and will indemnify both up to our policy limits." Doc. 84 at ¶ 18; Doc. 1 at 72. This broad, unlimited statement by Auto-Owners that it would defend and indemnify Plaintiffs, in the face of Plaintiffs' disclosure that they were making a targeted tender,

waived any objections Auto-Owners might have raised to the tender. *See Ins. Corp. of Ir., Ltd. v. Bd. of Trs. of S. Ill. Univ.*, 937 F.2d 331, 337 (7th Cir. 1991); *W. Cas. & Sur. Co. v. Brochu*, 475 N.E.2d 872, 878 (Ill. 1985); *Liberty Mut. Fire Ins. Co. v. Woodfield Mall, L.L.C.*, 941 N.E.2d 209, 226 (Ill. App. 2010); *Nat'l Discount Shoes, Inc. v. Royal Globe Ins. Co.*, 424 N.E.2d 1166, 1170 (Ill. App. 1981). It is therefore too late for Auto-Owners to make such an objection.

The final flaw in Auto-Owners's third argument is that Auto-Owners has failed to provide any reasoning or to cite any authority for its conclusion that if the initial tender to Auto-Owners was improper (the court believes it was proper), and if Auto-Owners had not waived its objection to the supposedly improper tender (the court believes it was waived), "under Illinois law, in a situation such as this, ... no conflict of interest can exist, as all of [Plaintiffs'] insurers remain required to provide a defense." *Id.* at 12. How would an improper tender whose propriety had not been waived obviate the conflict of interest between Plaintiffs and Auto-Owners and serve to distinguish *Wegman*? The answer to this question is not self-evident, and Auto-Owners does not give one. By failing to develop the argument or cite supporting authority, Auto-Owners forfeited its submission that the *Wegman* analysis is altered by the ostensibly improper nature of Plaintiffs' exclusive tender of their defense to Auto-Owners. *See Echo, Inc. v. Timberland Machs. & Irrigation, Inc.*, 661 F.3d 959, 967 (7th Cir. 2011); *Weber v. Univs. Research Ass'n, Inc.*, 621 F.3d 589, 592-93 (7th Cir. 2010); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407-08 (7th Cir. 2007) ("We agree with the district court's determination that [the plaintiff] waived (forfeited would be the better term) his discrimination claim by devoting only a skeletal argument in response to Cracker Barrel's motion for summary judgment."), *aff'd on other grounds*, 553 U.S. 442 (2008).

Fourth, Auto-Owners seeks to distinguish *Wegman* on the ground that Plaintiffs were aware of the nontrivial probability of an excess judgment at the time they tendered their defense to Auto-Owners. Doc. 82-1 at 12. That does make this case factually different from *Wegman*, but Auto-Owners gives no reason why the difference should matter, and the court perceives none. Auto-Owners's argument is merely that it would be "wholly inequitable to allow Addus and Clendenin to create a conflict and then be heard to complain about it." *Ibid*. But *Wegman* is clear that where an insurer has a duty to defend an insured and there is a conflict of interest between them, the insurer must pay for the insured to be defended by the insured's chosen counsel. That Plaintiffs were aware from the outset that Auto-Owners had that obligation does not alter the analysis; there is no suggestion that Plaintiffs were tardy in demanding that Auto-Owners pay for a defense by Johnson & Bell.

Thus, none of Auto-Owners's several arguments distinguishes *Wegman* from this case. Plaintiffs accordingly are entitled to summary judgment and to this declaration:

    a.    A conflict of interest exists between Auto-Owners Insurance Company, on the one hand, and Addus Healthcare and Whitney Clendenin, on the other, with respect to Auto Owners's defense of Addus and Clendenin in the underlying *Carney* suit.

    b.    Due to the conflict of interest, Addus and Clendenin have the right to select independent counsel at Auto-Owners' expense to defend them in the underlying *Carney* suit.

And because Plaintiffs are entitled to summary judgment, Auto-Owners's motion for summary judgment necessarily is denied.

December 12, 2012

_____
United States District Judge